150 N.J. Super. 488 (1977)
376 A.2d 180
MICHAEL J. SANNER, PLAINTIFF-RESPONDENT,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 16, 1977.
Decided June 9, 1977.
*489 Before Judges BISCHOFF, MORGAN and KING.
Messrs. Hansen, Pantages, Sellar & Zavesky, attorneys for appellant (Messrs. Louis J. Pantages and John G. Simmonds on the brief).
Messrs. Wilentz, Goldman & Spitzer, attorneys for respondent (Mr. Morris Brown, of counsel; Mr. Alan Wasserman on the brief).
PER CURIAM.
In this appeal concerning the liability of a no-fault insurance carrier for medical expenses, we are again called upon to consider whether expenses for medical treatment administered by the Federal Government to a serviceman in a Veterans Administration Hospital have been "incurred" within the meaning of the "No Fault" Law, N.J.S.A. 39:6A-1 et seq. The question was recently decided in favor of the serviceman and against the insurance carrier. Lapidula v. Government Employees Ins. Co., 146 N.J. Super. 463 (App. Div. 1977).
The present declaratory action was tried in the trial court on a stipulated set of facts which disclosed that on August 7, 1973 a policy issued by defendant Government Employees Insurance Company (GEICO) to plaintiff Michael J. Sanner was in effect and covered a 1970 Ford and a Chevrolet, both *490 owned by him. On that date plaintiff, a National Guardsman engaged in a two-week active tour of duty with the United States Army at Fort Dix, New Jersey, was injured when the jeep in which he was riding collided with a private passenger vehicle owned and operated by another. The testimony of that driver strongly suggests his responsibility for the accident in that he admits failure to make observations and failure to stop at a stop sign. As a result of the collision plaintiff was thrown from the jeep and suffered injuries for which he received treatment provided by the United States Army in a veterans' facility.
Plaintiff's claim for medical expenses pursuant to the Personal Injury Protection Benefits (PIP) coverage of the policy was rejected by GEICO on the grounds that plaintiff (1) was not an injured person under the PIP provisions of the policy, (2) was excluded from PIP benefits since the injury resulted from acts incident to war, insurrection, rebellion or revolution, and (3) has not "incurred" any medical expenses. The trial judge, in an opinion reported at 143 N.J. Super. 462 (Law Div. 1976), held all three of the asserted grounds for noncoverage to be without merit. We agree with the trial judge's ruling on the first two grounds for the reasons given in his opinion; we disagree, however, with the ruling on the third ground and confine our opinion to consideration of that issue.
There is no question but that plaintiff neither paid for treatment provided by the Veterans Administration facility nor became liable for the treatment rendered, 10 U.S.C.A. § 1074; he was in no sense under any obligation of reimbursement except for the Federal Government's right of subrogation against the tortfeasor, if any, whose conduct resulted in the serviceman's injuries. 42 U.S.C.A. §§ 2651-2653. Hence, if there was no tortfeasor, or if the serviceman's own negligent conduct produced his injuries, the Federal Government could not recover for the value of the treatment afforded. We are advised that in the present case plaintiff has already instituted suit against parties *491 he alleges negligently caused his injuries. If successful in his endeavor, the Federal Government would be entitled to reimbursement out of any such recovery or settlement for the reasonable value of the treatment afforded. Whatever disposition is made of the present controversy, however, the subrogation rights of the Federal Government pursuant to 42 U.S.C.A. §§ 2651-2653 will not be impaired; its recourse to the tortfeasor will remain unaffected.
The critical question here is whether plaintiff "incurred" expenses for medical treatment in light of the fact that he neither paid for them nor became liable to pay for them. Under the personal injury protection provisions of GEICO's policy, the company agreed to pay "medical expenses benefits" to an unlimited extent. Those benefits are defined in the policy as follows:
* * * "medical expenses benefits" means all reasonable expenses incurred for medical, surgical and dental treatment, professional nursing, hospital and rehabilitation services * * * and other reasonable and necessary expenses incurred for treatment prescribed by persons licensed to practice medicine, surgery, psychology or chiropractic, or for any non-medical remedial treatment rendered in accordance with a recognized religious method of healing. [Emphasis supplied].
Hence, a "no fault" carrier's liability for medical expenses is triggered by the insured incurring them, that is, either paying them or becoming liable to pay them. If he neither pays the expenses nor becomes liable to pay them, we fail to see how it can be said, with any degree of realism, that he has incurred such expenses.
In Lefebvre v. Government Employees Ins. Co., 110 N.H. 23, 259 A.2d 133 (Sup. Ct. 1969), plaintiff had received injuries in an automobile accident for which she received treatment in a federal hospital facility, the reasonable value of which was stipulated to be $918. Defendant carrier had agreed in its medical payments coverage "to pay all reasonable expenses incurred within one (1) year from the date of accident," and plaintiff sought recovery of the reasonable *492 value of the treatment afforded her from the carrier. The court denied recovery, holding that expenses are "incurred" within the meaning of the agreement "only when one has become obligated to pay for them." Since it was undisputed that plaintiff never became obligated to the Federal Government for the value of the treatment, she never "incurred" those expenses and a necessary condition to coverage under the policy was not fulfilled. See also, United States v. St. Paul Mercury Indem. Co., 238 F.2d 594 (8 Cir.1956); Irby v. Government Employees Ins. Co., 175 So.2d 9 (La. App. 1965); Gordon v. Fidelity & Casualty Co., 238 S.C. 438, 120 S.E.2d 509 (1961).
Significantly, although the statutory definition of "medical expenses" does not include the requirement that they be "incurred," N.J.S.A. 39:6A-2(e), that requirement is present in N.J.S.A. 39:6A-4, the section describing the required no fault coverage. Hence, under the latter section, the policy must include the carrier's obligation for "payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident * * *." Had the Legislature intended PIP coverage to be applicable whenever medical treatment was afforded an insured, it need not have included in that critical provision the necessity that such expenses be "incurred." The apparent basis for this requirement can be found in legislative efforts to avoid a double recovery of such expenses and, implicitly, recovery by an insured where liability for such expenses was not incurred or paid. See N.J.S.A. 39:6A-12; Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387 (1977). Were the judgment by the trial court to be affirmed, plaintiff would be in possession of funds representing the value of the treatment afforded him although without liability to the federal government therefor.[1] We *493 cannot conceive the public interest to be served by such a result.
The trial judge relied in part on that provision of the No Fault Law which adopted the collateral source rule with exceptions specified not here applicable. N.J.S.A. 39:6A-6. He reasoned that since the proceeds of private disability policies could not be used to offset a no fault carrier's liability for medical expenses, treatment rendered by the Federal Government for which the insured was under no liability could not be similarly offset.
This reasoning, however, avoids the principal issue posed, which is whether the no fault carrier has any liability for medical expenses in these circumstances, not whether the fact that they have been furnished without cost to the insured may be used as a mitigating factor. And whether the no fault carrier is liable in this case turns again on whether the insured "incurred" such expenses. The collateral source rule plays no role in making this determination.
The trial judge in this case and the court in Lapidula v. Government Employees Ins. Co., supra, placed heavy reliance upon United Services Automobile Ass'n v. Holland, 283 So.2d 381 (Fla. D. Ct. App. 1973). Holland also involved a claim under a no fault policy for medical treatment provided plaintiff in a naval hospital, rejected by the carrier on the ground that the insured had not incurred such expenses because under no liability to pay for them. The court's holding that the no fault carrier was liable for those expenses was based upon two theories. In the first, the court characterized the Florida No Fault Act as substituting the injured person's own *494 insurance company for the tortfeasor against whom the accident victim was previously permitted to proceed in order to recover the negligently inflicted damages. Following that theory to its necessary conclusion, the court reasoned that "the insured should be entitled to employ against its insurance carrier all provisions of law which he is in other circumstances permitted to employ against his tortfeasor in seeking recovery of damages suffered by him." 283 So.2d at 384. Insofar as the New Jersey No Fault Act is concerned, we reject the view that its implicit intention was to make no fault carriers universal tortfeasors for their insureds. The carrier's liability springs from contract, not tort, the result of a consensual arrangement whereby for a premium specified obligations to its insureds are assumed. Its liability is without regard to fault and limited to the benefits described therein if consistent with statutory requirements. We perceive no theoretical justification for the fiction and no benefits to be derived therefrom by way of public policy.
The second basis for the holding in Holland, supra is the view that since the Federal Government is subrogated to the rights of the treated serviceman against a tortfeasor whose conduct caused the injuries, 42 U.S.C.A. §§ 2651-2653, the No Fault Law cannot be interpreted to extinguish this right. The trial judge too took this view impliedly conceiving that rejection of plaintiff's claim for medical expenses would somehow result in frustrating the Federal Government's right to subrogation. We fail to understand how, under the New Jersey No Fault Act, substantial extinguishment of federal subrogation rights would occur, even were it to be viewed as relevant. Whether or not GEICO is held liable for medical expenses, the Federal Government can, and probably will, pursue its subrogation right against the tortfeasor, apparently the driver of the other car. If the claim is successful, it will recoup the reasonable value of the medical expenses which plaintiff is entitled to show if he has not recovered them from GEICO. N.J.S.A. 39:6A-12. If the claim is unsuccessful and defendant in the liability suit is *495 ultimately exonerated from liability as a tortfeasor, then the Government will be unable to recoup those losses, a contingency well within the intendment of the statute creating the subrogation right. Exonerating GEICO from liability for medical expenses never incurred will have no effect whatever on the Federal Government's right of subrogation.[2]
If, however, GEICO were to be held liable to pay its insured for medical expenses not incurred, then the insured may not introduce into evidence in the liability trial against the tortfeasor evidence of the amounts collected or collectible, N.J.S.A. 39:6A-12; no recovery can be had therefor and the Federal Government's right to subrogation will be, by those means, thwarted since the Government has no right of action against the serviceman treated for the reasonable value of medical care furnished.
Contrary to the views expressed by the trial judge, there exists a valid distinction between "benefits received by an injured person pursuant to some private medical payment insurance purchased by him and benefits received pursuant to 10 U.S.C.A. § 1074." Under a private policy the insured becomes liable for, and therefore incurs, the expenses which he must pay if his private carrier for some reason declines to do so; as a serviceman receiving medical treatment to which he is absolutely entitled with no obligation of reimbursement, he does not become liable for the reasonable value of the treatment. Hence, under the private policy, medical expenses *496 are incurred by the insured; when treatment is afforded by the Federal Government with no obligation to reimburse, such expenses are not incurred.
Nor are we impressed by the trial judge's concern with the alleged windfall for the carrier resulting from upholding its rejection of plaintiff's claim for medical expenses. First, any windfall would not be at plaintiff's expense but at the expense of the Federal Government. Moreover, whether or not there is a windfall is entirely irrelevant to whether plaintiff has incurred medical expenses. If the premium for policies covering those entitled to treatment in Government facilities is too high, that might be a matter for the Department of Insurance, or for the Legislature; it cannot, however, create coverage not afforded by the express terms of the policy. Second, it was plaintiff's option to seek treatment wherever he wished; had he admitted himself to a private hospital, the carrier would have been liable. Plaintiff's choice of hospital was his own. Third, it is not so that the carrier accepted a premium for a policy which provided no benefits. Had plaintiff injured a pedestrian or a passenger, the policy would have covered the latter's expenses, N.J.S.A. 39:6A-4, and as noted, had plaintiff himself obtained treatment in any hospital other than a federal one, or if he had been under an obligation to reimburse the Government, 10 U.S.C.A. 1074(b), the carrier would have been liable under its policy.
In its essential elements this case involves a contest between an insurance carrier and the Federal Government, both of which have been paid for their obligation of affording payment for medical treatment or providing the treatment, the carrier by a premium and the Government by the services of the serviceman. In providing its servicemen on active duty with an absolute right to medical treatment, the Government has protected itself by means of its subrogation right. GEICO, on the other hand, has protected itself by its contractual agreements consistent with statutory command. Both rights, *497 and the limitations thereon, should receive complete protection. Neither has been compromised by this holding.
For the foregoing reasons, the trial court judgment is vacated and judgment entered in favor of defendant. No costs.
NOTES
[1] Although the trial court opinion suggests that plaintiff's recovery of medical expenses is to be for the government's benefit, 143 N.J. Super. at 468, the final disposition places no such limitation on plaintiff's entitlement to the funds representing medical treatment, and the order entered pursuant to the opinion similarly is devoid of any such limitation. Moreover, we doubt the validity or wisdom of a limitation conferring on the Government a right to the funds which it would not otherwise possess. As noted in the body of the opinion, we do not regard GEICO as a tortfeasor within the meaning of the Government's right to subrogation created by 42 U.S.C.A. §§ 2651-2653, and fail to perceive the necessity for conferring upon the Government a right which it has not secured for itself.
[2] With the extremely low threshold over which tort suits are presently permitted, N.J.S.A. 39:6A-8, any substantial expenditure for an injured serviceman can be recouped. Even were a tort exemption to be conferred for all injuries caused by automobile, the Government's subrogation right would not be impaired thereby; that the serviceman to whose rights the Government is subrogated cannot recover cannot be viewed as an impairment of such right. All subrogation rights contemplate a mere succession to another's rights to recover; the fact that that other cannot recover is simply an incident of the right. The Government can easily take other steps to secure reimbursement if it so wishes; we see no warrant for this State to take such steps when the government has failed to do so.