HORACE JONES, Plaintiff-Appellant, Cross Appellee, *v.*
DON L. GORDON CORPORATION, Defendant-
Appellee, Cross Appellee, and STAR MANUFACTUR-
ING CO., Defendant-Appellee, Cross Appellant

NO. 5875

NOVEMBER 15, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This action seeks damages for delayed and defective de-
livery of a steel building fabricated on the mainland and
shipped to Hawaii in a disassembled condition. The circuit
court granted recovery from the mainland manufacturer and
denied recovery from the Hawaii distributor of the building.
We reverse as to both defendants.

On July 5, 1972 plaintiff-appellant Jones, a building con-
tractor and developer, contracted with defendant Don L.
Gordon Corporation (Gordon) for the purchase of three
prefabricated steel buildings to be manufactured by defen-
dant cross-appellant Star Manufacturing Co. (Star). Gordon
was the distributor, under a franchise, for Star's products in
Hawaii. The parties agreed that the first building would be

shipped six weeks after approved plans were received by Star.

The controversy in this case revolves around the effect of Jones', Gordon's, and Star's subsequent actions. After Jones and Gordon had concluded their agreement, Gordon submitted its purchase order and plans to Star. Jones withdrew the plans because a mistake had been made in the building's length. This change resulted in a price increase. On September 14, 1972, Gordon submitted revised plans and a new purchase order to Star and rescinded its July purchase order.

There was no express agreement between Jones and Gordon as to a new date for shipment or delivery. Gordon was notified in November that Star would be able to ship on November 17 and told Jones that the building would arrive December 1, 1972. However, Star did not ship until January 1973. The building arrived in Honolulu on February 15, 1973, Gordon requested payment, and Jones paid the remaining $19,966.44 owed. Gordon, however, could not deliver the building. Star had shipped the pieces for Jones' building mixed with those for another customer, and the whole lot had been consigned to a freight forwarding company which refused to release any of the shipment to Gordon until Star was paid for both orders.

After Gordon tried unsuccessfully to get Star to release only Jones' order, Jones contacted Star directly. He made seven or eight phone calls but in the end was told that nothing would be released until payment was received for both orders. Jones then sought and obtained on March 23, 1973 a court order for the release of the building. He obtained possession on April 15, 1973.

In a jury-waived trial, the circuit court found that a direct contractual relationship existed between Jones and Star after the February 15, 1973 delivery of the steel to the Honolulu dock. By failing to deliver and by delivering defective materials, Star was held to have breached that contract and therefore to be liable for Jones' subsequent losses. As to Jones' claim against Gordon, the circuit court found that a new contract existed between these parties in September 1972, but that no specific date for delivery was agreed upon and no

liability existed.

Based on these findings, judgment was entered in favor of Jones against Star for damages due to delayed delivery and defects in the materials delivered, and in favor of Gordon on Jones' claim. The cross-claim of Star against Gordon was dismissed. The cross-claim of Gordon against Star for indemnification was not dealt with. Jones and Star have appealed.

I

We are faced with difficulty in our review of this case as a result of the circuit court's paucity of findings and conclusions on the terms of the contract which it held to have arisen between Jones and Star after arrival of the building in Honolulu. There are no findings of fact which pertain to the circumstances of the creation of the new contractual relationship, other than a finding that Jones made repeated telephone calls to Star requesting that the building be released to him, which requests were refused by Star. Furthermore, the court concluded that Gordon was an independent dealer selling Star's buildings in Honolulu and was not the agent of Star in dealing with Jones. The record fully supports this conclusion. It follows that the contract of sale with respect to the building was one to which Star was not a party prior to February 15, 1972.

In the absence of more specific findings, we can only look to the judgment which awarded to Jones against Star his damages from delayed delivery of the building and defects in the materials delivered, and which denied recovery from Gordon. We infer from the judgment that the circuit court concluded that a novation had taken place, by which Star was substituted for Gordon as the seller in the contract of sale of the building.

We have examined the record without finding evidence to support the conclusion that novation occurred. The finding that Jones had telephone conversations with Star is obviously insufficient support. Prior to February 15, 1972, Star was clearly dealing only with Gordon. By including the building ordered by Gordon for Jones in a shipment with a building

ordered by Gordon for another customer, and by insisting upon payment for both before releasing either, Star affected Gordon's ability to fulfill his obligations as seller under the contract of sale. Whether Star failed in the performance of any obligation owed to Gordon was not determined by the circuit court and is not a question before us on this appeal. It is argued by Jones that Star was aware of every obligation of Gordon to Jones, that by taking control of the shipment Star forced direct negotiation between itself and Jones, that Star's conduct was consistent with a direct contractual relationship between Star and Jones and that legal obligations to Jones were created by Star's manipulation of the events to its own advantage at the expense of Jones. We do not find support for a contractual relationship between Star and Jones in these circumstances.

We have said in *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 56 Haw. 466, 470-71, 540 P.2d 978, 982 (1975):

There must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract. . . . The existence of mutual assent or intent to accept is determined by an objective standard. . . . Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties. (citations omitted)

The record contains no evidence that Jones and Star agreed in any respect upon the terms of release of the building after its arrival in Honolulu or in any way manifested an intent that Star should be substituted for Gordon in the purchase contract. There being no finding of fact to that effect, we are not faced with consideration of the binding effect of the trial court's findings under H.R.Civ.P. Rule 52.

Since the conclusion of the trial court that direct contractual relations existed between Jones and Star is without support in the record, the judgment based thereon must be reversed. Jones was in the unenviable position of an "incidental beneficiary" of a contract between Gordon and Star for the supply to Gordon of the goods which Gordon had contracted to sell to Jones. As such incidental beneficiary, Jones had no action against Star on the latter's undertaking to Gordon. 4

Corbin, Contracts § 779D (1951); Restatement of Contracts Second (Tent. Dr.) § 133.

II

Jones appeals from the judgment for Gordon on Jones' claim for damages from Gordon's breach of the contract for sale and delivery of the building. Gordon did not file a brief or otherwise respond to the appeal.

The trial court found that the negotiations between Jones and Gordon after the making of the original contract resulted in a contract which reflected changes in the building originally ordered by Jones and in which no specific delivery date was agreed upon. Although not dealt with by the trial court, it would appear that the new contract thus obligated Gordon to deliver the building materials within a reasonable time. HRS § 490:2-309(1). The court made no finding with respect to the reasonable time for delivery by Gordon, although an inference that delivery was not timely under the contract can be drawn from the court's assessment against Star of damages for Jones' losses due to delay in delivery. It was found that a default in performance of the seller's obligations under the contract occurred as the result of delivery of defective materials.

Under these circumstances, the trial court's conclusion that Gordon had no liability for any of the damages found to have been suffered by Jones as the result of late delivery and defects in the materials delivered is supportable only on the theory of a novation which substituted Star for Gordon and relieved Gordon from responsibility for performance of the contract.

Since the trial court's conclusions that such a novation was effected must be set aside, the judgment for Gordon on Jones' claims must also fall. The judgment included dismissal of Star's cross-claim against Gordon. No findings or conclusions dealt directly with the claims of Star against Gordon, and we must assume that dismissal of the cross-claim was also predicated upon the existence of a novation. Accord-

ingly, the judgment is wholly vacated and the case is remanded for further proceedings consistent with this opinion.

*Charles R. Kozak* for plaintiff-appellant, cross appellee.

*Alan M. Oshima (Raymond S. Iwamoto* and *Joseph T. Kiefer* on the briefs; *Carlsmith, Carlsmith, Wichman* and *Case* of counsel) for defendant-appellee, cross appellant.