UNITED STATES of America, Plaintiff,

v.

**DAIRYLAND INSURANCE COMPANY, Defendant.**

Civ. A. No. C85–0062A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 12, 1986.

Robert Tayloe Ross, Atlanta, Ga., M. Charlene Lane, U.S. Veterans Admin., for plaintiff.

Richard B. Eason, Jr., Eason, Kennedy & Associates, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is an action by the United States against a non-retiree veteran's insurance carrier for reimbursement of medical expenses incurred at a Veterans Administration Hospital for treatment of that veteran's non-service related injuries. The United States has moved for summary judgment.

## CONCLUSIONS OF FACT

**1.**

Veteran Joe Adams was injured in an automobile accident in the State of Georgia on October 1, 1980.

**2.**

As a result of the accident, Veteran Joe Adams was hospitalized for 43 days and received medical treatment at the Veteran's Administration Hospital in Gainesville, Florida. *See* Plaintiff's Exhibit 1; and Defendant's September 20, 1985 Statement of Facts ["Defendant's Statement"] at ¶ 1.

**3.**

Joe Adams, at the time of his treatment in Gainesville was a veteran non-retiree of United States Military Service.

**4.**

Neither the accident nor the medical treatment was service connected.

**5.**

As a result of the aforesaid medical treatment, plaintiff contends that Joe Adams has incurred medical expenses of $7,676.00, i.e., $7,463.00 in the period immediately following the accident plus $231.00 for additional treatment received in 1981. *See* Plaintiff's Exhibits 1, 2 and 5; and Defendant's Statement at ¶ 5.

Defendant denies this statement without offering supporting evidence.

**6.**

At the time of the referenced accident, Joe Adams was driving his automobile which was insured with Dairyland Insurance Company, Policy No. 09–0194490, which policy included "no-fault" personal injury protection [PIP] pursuant to Georgia law. *See* Plaintiff's Exhibits 3 and 4; and Defendant's Statement at ¶ 3.

**7.**

The insurance application form contained the required space for indicating rejection or reduction of the optional insurance coverage. *See* Plaintiff's Exhibit 3.

**8.**

Plaintiff contends that the signature of Veteran Joe Adams appears only in two spaces on the insurance application form; once in the center of the form, in the space authorizing the insurance company to obtain records from the Georgia Department of Public Safety concerning his driving; and once at the bottom of the insurance application form under the statement declaring that no one will operate the insured vehicle other than those shown on the form and stating his understanding that false representations on the insurance application form would void his coverage. Further, plaintiff contends veteran Joe Adams did not sign the space provided to reject or reduce optional coverage. Plaintiff also contends veteran Joe Adams did not specifically and knowingly reject optional personal injury coverage in writing and by signature. *See* Plaintiff's Exhibits 3 and 5.

Defendant denies this statement without offering supporting evidence.

**9.**

Plaintiff contends Joe Adams assigned to the Veteran's Administration his right to recover under the aforementioned insurance policy issued by defendant Dairyland Insurance Company. *See* Plaintiff's Exhibit 7; Defendant's Statement at ¶ 1.

Defendant denies this statement without offering supporting evidence.

**10.**

Plaintiff contends The defendant was informed of the accident, of the medical expenses, of the insured's demand to pay additional premiums for the coverage provided by Georgia law and of the insured's assignment to the Veteran's Administration of his right to recover. Plaintiff contends the defendant was requested to make payment under the insurance policy to the Veteran's Administration in its capacity as assignee of Joe Adams. Defendant has refused to make any such payment. *See* Plaintiff's Exhibits 8 and 9.

Defendant denies this statement without offering supporting evidence.

**11.**

Plaintiff contends that Joe Adams was able to defray the medical expenses for his treatment by the Veteran's Administration

hospital in light of his insurance coverage with Dairyland Insurance Company.

Defendant denies this statement without offering supporting evidence.

## DISCUSSION

The United States has moved for summary judgment arguing that the presence or absence of a signature by veteran Joe Adams at the appropriate space on the insurance application to indicate rejection of optional PIP coverage is dispositive of whether Adams is entitled to the optional coverage. Defendant admits this. (Defendant's Brief in Opposition at 2). However, defendant argues that a signature faintly appears on the appropriate line. Further, defendant argues that Adams never "incurred" any medical expenses himself, and therefore, defendant insurer has no obligation to pay on Adam's policy. The court will address each of these arguments in turn.

As to the issue of the signature, the court feels defendant has failed to comply with the requirements of Fed.R.Civ.P. 56(e).[1] Where movant produces specific facts entitling it to summary judgment, the non-movant must come forward with competent evidence setting out specific facts that would support a conclusion that a genuine issue of material fact remains for trial. The non-movant may not rely just on its pleadings. *Pines v. Warnaco, Inc.,* 706 F.2d 1173, 1178 (11th Cir.1983). Furthermore, mere denials or allegations by the non-movant in the form of legal conclusions unsupported by specific facts have no probative value and are therefore insufficient to create issues of material fact to preclude summary judgment. *Westlake v. Abrams,* 565 F.Supp. 1330, 1335 (N.D.Ga.1983) (Moye, J.).

The Supreme Court recently reiterated that one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Defendant admits that the absence of Joe Adam's signature would be dispositive, at least of whether he is entitled to optional coverage. *See also Flewellen v. Atlanta Casualty Co.,* 250 Ga. 709, 711, 712, 300 S.E.2d 673, 675, 676 (1983). However, defendant rests on the allegations in its response brief that a "faint" signature of Adams appears in the appropriate place on the insurance application, indicating his rejection of optional PIP insurance coverage. Defendant asserts even though plaintiff's Exhibit 3 (the copy of the application) shows no signature, that microfilm could be submitted at trial to demonstrate a signature exists. Plaintiff contends that no signature appears in the PIP box, faint or otherwise. Plaintiff further contends that two other signatures of Joe Adams appear legibly on the same page, one authorizing the defendant to obtain records from the Georgia Department of Safety, and the other declaring no one will operate the vehicle than those indicated on the application form.

The court finds that the defendant's response is entirely insufficient to withstand the motion for summary judgment. Reliance on its memorandum of law in response to the United States' motion without supporting affidavits or producing the alleged microfilm is insufficient to establish an issue of material fact for trial. Without more, the offer in defendant's brief of producing the microfilm at trial is equally insufficient.

The court now turns to the question of whether Adams "incurred" the medical expenses of which the United States now seeks reimbursement. If so, summary judgment in favor of plaintiffs is proper.

---

**1.** Rule 56(e) provides that:

[W]hen a motion for summary judgment is made and supported as provided by this Rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavit or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. Fed.R.Civ.P. 56(e).

Joe Adams received medical treatment at the Veteran's Administration Medical Center in Gainesville, Florida. He was hospitalized for 43 days and was seen as an outpatient on three occasions in the two months following his discharge from the hospital. (Plaintiff's Exhibit 1). He subsequently received follow up care on four occasions over the next nine months. (Plaintiff's Exhibit 2). The charges for the medical care amounted to $7,676.00. This much is undisputed.

Medical care was rendered to Joe Adams under authority of Title 38 U.S.C. § 610, as implemented by 38 C.F.R. § 17.47 and § 17.48 (1980). (The letter promulgated by the VA Administrator pursuant to authority granted him by Title 38 U.S.C. § 210 to make rules and regulations necessary to carry out the laws administered by the Veteran's Administration). Title 38 U.S.C. § 610 in pertinent part provides, *inter alia:*

(a) The Administrator, within the limits of Veterans' Administration facilities, *may* furnish hospital care ... to:

(1)(B) any veteran for a nonservice-connected disability *if such veteran is unable to defray the expenses of necessary hospital or nursing home care.*

(Emphasis added).

Medical care provided in VA hospital for nonservice-connected disabilities incurred by veterans is permissive and not mandatory. This fact distinguishes the medical care provided in Joe Adams' case from that considered in the recent case of *United States v. Travelers Indemnity Co.,* 729 F.2d 735 (11th Cir.1984). In *Travelers,* the court considered a case in which a military *retiree* was injured and was furnished medical care in a military hospital. The court determined that since the government was seeking reimbursement from the serviceman's insurance company rather than from a third party tortfeasor, the Federal Medical Care Recovery Act, 42 U.S.C. § 2651, et seq., was not applicable. The court found no federal common law to control its decision. *Travelers, supra,* 729 F.2d at 737. As a result, the court, decided that state law would govern the outcome of

the case and therefore certified the following question to the Georgia Supreme Court:

Whether the United States can recover from an insured person's insurance company pursuant to the Georgia Motor Vehicle Accident Reparations Act, O.C.G.A. § 33–34–1 *et seq.* for the reasonable cost of medical care provided, the insured person (or his dependent) pursuant to 10 U.S.C. § 1074 *et seq.* as a result of a motor vehicle accident covered under this policy.

*Id.* at 738.

The Georgia Supreme Court answered the question in the negative and provided the following rationale:

Examining the Act as a whole, we conclude the legislature intended that the no-fault carrier be required to pay only those expenses which are incurred by the *insured.* In order for an insured to incur medical expenses which would trigger the no-fault carrier's duty to pay, he must have either paid them or have become liable for them.... Where as here, the United States provides all medical treatment to the insured, without cost to the insured, the insured has incurred no expenses within the meaning of the Act. The no-fault carrier's obligation to pay is therefore never triggered and neither the insured nor the United States may seek a recovery from the no-fault carrier.

*United States v. Travelers Indemnity Co.,* 253 Ga. 328, 320 S.E.2d 164 (1984).

*Travelers* dealt with a military retiree entitled to medical care pursuant to Title 10 U.S.C. § 1074. Such personnel are entitled to medical care at government expense as a matter of statutory right, either in a military medical facility or in a private medical facility pursuant to the Civilian Health and Medical Program of the Uniform Service. 32 C.F.R. § 199.1 *et seq.* Military retirees may also be provided medical care in a VA hospital; but, when such care is provided, the Department of Defense is required to reimburse the VA for the medical expenses. 10 U.S.C. § 1074(b).

■ In contrast, veterans such as Joe Adams who are not military retirees are not entitled as a matter of right to free medical care in VA hospitals for nonservice-connected disabilities. An entirely different statutory scheme affects such personnel. 38 U.S.C. Chap. 17. In implementing his discretionary authority to provide nonservice-connected medical care, the Administrator has long had a program requiring reimbursement from those veteran's who could afford to pay for such care or whose medical expenses were reimbursable by insurance. The program in effect at the time of Joe Adams' treatment was promulgated in 38 C.F.R. §§ 17.47–17.48 (1980). Title 38 C.F.R. § 17.48(d) provided in pertinent part that:

Persons hospitalized pursuant to paragraph (c)(1), (d) or (e) of § 17.47 who it is believed may be *entitled* to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof by reason of any one or more of the following:

\*    \*    \*    \*    \*    \*

(1) ... (ii) rights under a group hospitalization plan, or any of the prepayment medical care or insurance contracts or plans which provide for payment or reimbursement in whole or in part for the cost of medical or hospital care, *and conditions the obligations of the insurer to payment upon payment or incurrence of liability by the person covered* ... or (2) By reason of statutory or other relationships with third parties, including those liable for damages because of negligence or other legal wrong;

*will not be furnished hospital care,* medical or surgical treatment, *without charge* therefor ...

(Emphasis added).

The VA has collected reimbursement for medical treatment pursuant to the procedures provided in 38 C.F.R. § 17.48. *See, e.g., Texas Employers' Insurance Ass'n v. United States,* 558 F.2d 766 (5th Cir.1977) and *United States v. Bender Welding & Machine Company,* 558 F.2d 761 (5th Cir. 1977). The Congressional intent for the

VA to seek reimbursement from insurance carriers is further supported by the enactment of Pub.L. 97–72 in 1981, which added 38 U.S.C. § 629. The legislative history further shows that Congress recognized the difficulty the VA was experiencing in attempting to collect reimbursement under various state laws. The Veterans' Affairs Committees of the House and the Senate noted that:

The reported bill would *strengthen and clarify* the Veterans' Administration's *authority* to *recover* the *costs of veterans' nonservice-connected care* from State workers' compensation, *"no-fault" auto insurance* and crimes of personal violence where a veteran would have entitlement to payment or reimbursement by a third party for appropriate medical care furnished in a non-federal hospital. (Emphasis added).

1981 U.S.Code Cong. & Ad.News, 1685, 1693.

Though the new Federal statute became effective in November, 1981, there is nothing in the statute to preclude continuing action under preexisting law for claims existing prior to its enactment. For the claim at bar, the legislative history provides strong evidence that Congress did *not* intend for the VA to provide free medical care for nonservice-connected disabilities to veterans who were able to pay or who were able to defray the expenses of medical treatment through insurance coverage.

■ In this case, Joe Adams has incurred medical expenses for the treatment furnished by the VA. Following that court's guidance in *Travelers,* such incurrence therefore "would trigger the no-fault carrier's duty to pay." *Travelers, supra,* 253 Ga. 328, 320 S.E.2d 164. On this basis, Joe Adams had a legal right to obtain from Dairyland Insurance Company the amount of medical expenses.

On March 30, 1981, Joe Adams assigned his right of recovery to the United States. (Plaintiff's Exhibit 7). Defendant offers no evidence to contradict this assertion. This assignment was pursuant to 38 C.F.R.

§ 17.48(d). The Fifth Circuit held that state law does not control an assignment of rights under this regulation because the regulation was promulgated in accordance with federal statute and has the force of federal law, displacing state law under the Supremacy Clause of the Constitution. *Texas Employers' Insurance Ass'n v. United States, supra,* 569 F.2d at 875 (5th Cir.1978).

Therefore, because the court has found that: (1) defendant has failed to demonstrate an issue for trial on whether the PIP option clauses of the insurance application were signed, (2) under the relevant statutory provisions, Adams incurred the medical expenses at issue here, and (3) Adams assigned his right of recovery to the United States, summary judgment in this case is proper. Accordingly, the court GRANTS plaintiff's motion for summary judgment. This action hereby terminates the matter.