UNITED STATES OF AMERICA, Plaintiff-Appellant, *v.* ALLSTATE INSURANCE COMPANY, Defendant-Appellee (U.S.D.C. Civ. No. 84-0860)

NO. 11441

(9th CIR. NO. 85-2191)

JULY 30, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

We are asked to answer "a question of Hawaii state law determinative of a cause of action pending before the United States Court of Appeals for the Ninth Circuit on which there is no clear controlling precedent in the Hawaii judicial decisions."[1] The ques-

---

[1] Rule 13(a) of the Hawaii Rules of Appellate Procedure provides:

When Certified. When a federal district or appellate court certifies to the Hawaii Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaii which is determinative of the cause, and that there is no clear controlling precedent in the Hawaii judicial decisions, the Hawaii Supreme Court may answer the certified question by written opinion.

tion propounded by the federal appellate court for our response is whether the United States may recover from a serviceman's no-fault insurance carrier the costs of medical care furnished in a government hospital to the serviceman who was injured in a motor vehicle accident.[2] After reviewing the facts outlined in the certification, the pertinent provisions of the Hawaii Motor Vehicle Accident Reparations Act, Hawaii Revised Statutes (HRS) chapter 294, and the practices related to the reimbursement of health care providers by insurers covered thereunder, we frame our response in affirmative terms.

## I.

Thomas L. Strathman, an enlisted member of the United States Navy and the owner of a motorcycle insured under a no-fault insurance policy written by Allstate Insurance Company, sustained injuries on August 21, 1982 while riding his motorcycle. He was injured when the two-wheeled vehicle skidded out of control and fell on him. Strathman sustained multiple lacerations and abrasions requiring treatment in a hospital as a result of the "solo motor vehicle accident."[3]

The injured cyclist was hospitalized initially at Castle Memorial Hospital, a civilian medical facility. He was transferred after receiving emergency treatment to Tripler Army Medical Center. The United States subsequently reimbursed Castle Memorial for Strathman's emergency medical care, but did not seek reimburse-

---

[2] The determinative question of law as put by the Court of Appeals is:

Can the United States recover from an insured person's insurance company pursuant to the Hawaii Motor Vehicle Accident Reparations Act, Hawaii Rev. Stat. § 294-1, et. seq., for the medical care costs provided the insured person pursuant to 10 U.S.C. § 1071, et. seq., as a result of a motor vehicle accident covered by the insurance policy?

[3] Since this was a "solo motor vehicle accident," the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653, which "creates an independent right in the United States to recoup any sums spent for the medical care of an injured serviceman from a third-party tortfeasor," does not apply. *United States v. Allstate Insurance Co.*, 606 F. Supp. 588, 589 (D. Haw. 1985) (footnote omitted).

ment from Strathman for the medical care he received at Castle or Tripler.[4]

The government, however, made a claim against Allstate, his no-fault insurance carrier, "for the total cost of the medical care and treatment provided at the expense of the [United States] to . . . Strathman which amounted to a sum of $2,604.10." Allstate tendered the United States a check for $168.10, the amount the government paid Castle Memorial, but refused to pay the balance of the claim. The government rejected the tendered draft and reiterated its demand for $2,604.10.

When Allstate again ignored the demand for full payment, the government filed a Complaint for Money Damages in the United States District Court for the District of Hawaii. The complaint averred the government was entitled to recover from Allstate "the reasonable value of the medical care and treatment [the United States] provided to Thomas L. Strathman, an amount equal to $2,604.10," under the provisions of Hawaii's no-fault law, HRS chapter 294, as "an intended third-party beneficiary of . . . Strathman's insurance contract with [Allstate]," and because Allstate otherwise would be unjustly enriched at the government's expense.

Allstate denied the allegations of the complaint, and both parties moved thereafter for summary judgment. The district court granted Allstate's plea for judgment. *United States v. Allstate Insurance Co.*, 606 F. Supp. at 588. Relying on the language of HRS § 294-3(a),[5] the court ruled the United States was not a "person, insured under this chapter" and did not suffer "accidental harm." *United States v. Allstate Insurance Co.*, 606 F. Supp. at 590-91. Citing

---

[4] As an enlisted Navy man on active duty status, Strathman was entitled to receive medical care at the Army hospital at government expense. 10 U.S.C. § 1074(a) reads:

Under joint regulations to be prescribed by the [Secretary of Defense], a member of a uniformed service who is on active duty is entitled to medical and dental care in any facility of any uniformed service.

[5] The Motor Vehicle Accident Reparations Act provides an insured a "right to no-fault benefits"; it reads:

If the accident causing accidental harm occurs in this State, every *person, insured* under this chapter, and the person's survivors, suffering loss from *accidental harm*

our decision in *Jones v. Don L. Gordon Corp.*, 60 Haw. 12, 586 P.2d 1024 (1978), to support its ruling, the court held the government could not recover as a third-party beneficiary under Strathman's Basic No-Fault Endorsement policy[6] because Strathman had not "intended to benefit the United States." *United States v. Allstate Insurance Co.*, 606 F. Supp. at 591.

The government appealed the adverse ruling to the United States Court of Appeals for the Ninth Circuit. A panel of the court, after reviewing the briefs submitted by the parties and hearing argument, concluded the appeal "raise[d] a question of Hawaii no-fault law that the Hawaii Supreme Court has not addressed." The panel thus summarized the relevant facts and framed the following query for our consideration: "Can the United States recover

---

arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits.

HRS § 294-3(a) (1985) (emphasis added). The Act does not define the term "person, insured." However, the district court declared

a reading of the statute as a whole leads this court to conclude that only the following persons are "insured": those persons identified by name in the policy; a spouse or other relative residing in the same household with the named insured; operators, occupants, or users of the insured vehicle; and pedestrians, bicyclists or moped operators injured by the insured vehicle. The United States does not fall within any of those categories.

*United States v. Allstate Insurance Co.*, 606 F. Supp. at 590. The Act does define "accidental harm" as "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." HRS § 294-2(1) (1985).

[6] The Basic No-Fault Coverage (Personal Injury Protection) section of Strathman's no-fault policy provides:

The Company will pay, in accordance with the Hawaii no-fault law, no-fault benefits on account of accidental harm sustained by an *eligible injured person* and caused by an accident arising out of the operation, maintenance, or use of a motor vehicle as a vehicle.

(Emphasis added). And the policy defines "eligible injured person" as follows:

(i) the named insured or any relative who sustains accidental harm arising out of the operation, maintenance or use of, or while a pedestrian caused by, any motor vehicle; or

(ii) any other person who sustains accidental harm arising out of the operation, maintenance or use of, or while a pedestrian caused by, the insured motor vehicle.

The federal district court held that since "[t]he United States is not an 'eligible injured person' as that term is defined in the policy," it was "not an intended beneficiary of the promised performance." *United States v. Allstate Insurance Co.*, 606 F. Supp. at 591.

from an insured person's insurance company pursuant to [Hawaii's no-fault insurance law] the medical care costs provided the insured person . . . as a result of a motor vehicle accident covered by the insurance policy?" *See supra* note 2.

## II.

Here, the United States argues as it did earlier, asserting "the Hawaii no-fault laws provide a statutory basis for recovery," it is "entitled to recover as a third-party beneficiary of the insurance contract," and Allstate "has received a windfall and [has] been unjustly enriched and is, therefore, . . . liable . . . for the costs of [the] health care provided." Finding the purposes and language of our motor vehicle accident reparations law provide a basis for recovery, we conclude the United States may recover the costs of the medical care received by the injured serviceman.[7]

## A.

The Hawaii Motor Vehicle Accident Reparations Act, HRS chapter 294, "an essentially restructured automobile insurance reparations system," Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219, "bottomed on the compulsory coverage of all motor vehicles and operators under no-fault insurance policies and the partial abolition of tort liability," was enacted in 1973.[8] *Barcena v. Hawaiian Insurance & Guaranty Co.,* 67 Haw. 97, 102, 678 P.2d 1082, 1086 (1984); *see also* Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635; Stand. Comm. Rep. No. 402, in 1973 Senate Journal, at 817; Conf. Comm. Rep. No. 13, in 1973 House Journal, at

---

[7] Because the question certified by the Ninth Circuit is whether the United States may recover pursuant to HRS chapter 294, we do not address the government's contract and equity arguments separately.

[8] The legislature was "of the belief that a basic, comprehensive, equitable, and reasonably priced auto insurance policy must satisfy each of the following criteria:

(1) Provide for a speedy, adequate and equitable reparation for those injured or otherwise victimized;
(2) Provide for the stabilization and reduction of motor vehicle liability insurance premium rates;
(3) Provide for insurance coverage for all who require it, at a cost within the

1219; Joint Stand. Comm. Rep. No. 187, in 1973 House Journal, at 836. The legislature intended thereby "to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294-1(a). Participation in this "system of no-fault insurance" is mandatory because the legislature found the statutory scheme would "only be truly effective . . . if *all* drivers participated at least to the extent required by law." *Id.* § 294-1(b) (emphasis added). The legislature further provided that, "[i]f the accident causing accidental harm occurs in the State, every person, insured under [HRS chapter 294] suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits." *Id.* § 294-3(a).

Thus, "[i]f [an] injured person has purchased the 'no-fault policy' required of all motor vehicle owners and operators, the insurer is obliged to compensate him for damages to the extent they fall within 'no-fault benefits' as defined by HRS § 294-2(10)."[9] *Barcena v. Hawaiian Insurance & Guaranty Co.,* 67 Haw. at 102, 678 P.2d at 1086. And, we have read the provisions of HRS chapter 294 consistently with "[t]he legislative will . . . that 'every [insured] person . . . suffering loss from accidental harm arising out of the operation . . . of a motor vehicle has a *right* to no-fault benefits.' HRS § 294-3." *Id.* at 104, 678 P.2d at 1087 (emphasis added).

---

reach of every licensed driver;
    (4)  Provide for a compulsory insurance system;
    (5)  Provide for adequate regulatory control."

Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635-36; Stand. Comm. Rep. No. 402, in 1973 Senate Journal, at 817; Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219.

[9] HRS § 294-2(10) in part relevant to this case provides:

"No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or the person's survivor and means:

(A)  All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any nonmedical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer[.]

## B.

The United States asserts a claim to "no-fault benefits" on grounds that it was a "person, insured" who sustained a "loss from accidental harm." Allstate counters that Strathman, rather than the government, was the "person, insured" who suffered the "loss from accidental harm."

"On superficial examination, the [language of HRS § 294-3] appears to preclude the payment of the claimed 'no-fault benefits.'" *Barcena v. Hawaiian Insurance & Guaranty Co.*, 67 Haw. at 103, 678 P.2d at 1086. The term "person, insured," though not separately defined in the statute,[10] may be read to include only "those persons identified by name in the policy; a spouse or other relative residing in the same household with the named insured; operators, occupants, or users of the insured vehicle; and pedestrians, bicyclists or moped operators injured by the insured vehicle." *United States v. Allstate Insurance Co.*, 606 F. Supp. at 590. Moreover, the term "accidental harm" has been defined to encompass "bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person." HRS § 294-2(1).

"Still, the unavailability of benefits for [the United States] cannot be reconciled with Chapter 294's declared purpose to create a no-fault system of reparations, its limitation of tort liability, and its establishment of right to 'no-fault benefits' for loss from accidental harm arising out of the operation of a motor vehicle." *Barcena v. Hawaiian Insurance & Guaranty Co.*, 67 Haw. at 103, 678 P.2d at

---

[10] The no-fault statute, however, does define the term "no-fault insured" as it is used to denominate a class of beneficiaries when an "accident causing accidental harm occurs *outside* this State." HRS § 294-3(b) (1985) (emphasis added).

(d) "No-fault insured" means:
(1) Person identified by name as an insured in a no-fault policy complying with section 294-10; and
(2) While residing in the same household with a named insured, the following persons not identified by name as an insured in any other contract of no-fault policy complying with this chapter: a spouse or other relative of a named insured; and a minor in the custody of a named insured or of a relative residing in the same household with a named insured. A person resides in the same household if the person usually makes the person's home in the same family unit, even though the person temporarily lives elsewhere.

*Id.* § 294-3(d) (1985).

1086. A denial of benefits cannot be squared with the comprehensive scheme designed to provide "a speedy, adequate and equitable reparation for those injured or otherwise victimized" by motor vehicle accidents. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635; Stand. Comm. Rep. No. 402, in 1973 Senate Journal, at 817; Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219. *See supra* note 8. In our view the United States, under the comprehensive statutory scheme and Allstate's own reading of the provisions in question, is entitled to receive "no-fault benefits."[11] For the United States was victimized, in a sense, by the motorcycle accident and it was considered by Allstate a "person, insured" under HRS chapter 294 who "suffer[ed] loss from accidental harm."[12]

When the United States submitted its claim for no-fault benefits, Allstate tendered a check for $168.10 to defray the cost of medical care furnished Strathman at Castle Memorial Hospital. The injured cyclist's insurance carrier was not obliged to do so unless the claimant was indeed a "person, insured . . . suffering loss from accidental harm." But Allstate did not regard the United States as having suffered loss with respect to the remainder of the claim, though it undoubtedly had also incurred costs in treating Strathman at a government hospital.

The rationale for this inconsistency can only be that the United States suffered an out-of-pocket monetary loss in paying Castle Memorial but did not suffer a similar loss in treating Strathman at Tripler, inasmuch as it is obligated by statute to provide servicemen "free" medical care. *See United States v. Allstate Insurance Co.,* 754

---

[11] "No-fault benefits" include "[a]ll appropriate and reasonable expenses necessarily incurred for medical [and] hospital . . . services." *See supra* note 9. The United States clearly incurred expenses when it treated Strathman at Tripler Army Medical Center. *See United States v. Government Employees Insurance Co.,* 605 F.2d 669, 671 (2d Cir. 1979); *United States v. Allstate Insurance Co.,* 606 F. Supp. at 590; *United States v. Criterion Insurance Co.,* 198 Colo. 132, 135, 596 P.2d 1203, 1206 (1979).

[12] We are mindful of case law to the contrary. *See, e.g., United States v. Allstate Insurance Co.,* 754 F.2d 662 (6th Cir. 1985); *United States v. Dairyland Insurance Co.,* 674 F.2d 750 (8th Cir. 1982); *United States v. Travelers Indemnity Co.,* 253 Ga. 328, 320 S.E.2d 164 (1984); *Lefebvre v. Government Employees Insurance Co.,* 110 N.H. 23, 259 A.2d 133 (1969); *Sanner v. Government Employees Insurance Co.,* 150 N.J. Super. 488, 376 A.2d 180 (1977), *aff'd,* 75 N.J. 460, 383 A.2d 429 (1978). However, we choose not to adopt the reasoning of these jurisdictions.

F.2d at 665; *United States v. Travelers Indemnity Co.*, 253 Ga. at 329, 320 S.E.2d at 166; *Sanner v. Government Employees Insurance Co.*, 150 N.J. Super. at 491-92, 376 A.2d at 182. *Cf. Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 146, 395 P.2d 927, 932 (1964). But even a military hospital incurs expenses it would not otherwise incur with the admission of each patient.

The reading of HRS § 294-3 urged by Allstate also does not comport with its practice of routinely reimbursing Kaiser Foundation Health Plan, a health maintenance organization,[13] for treating members who are injured in motor vehicle accidents.[14] One insured under the Kaiser plan, like a serviceman, does not pay the treating hospital when medical care is provided. *See Masaki v. Columbia Casualty Co.*, 48 Haw. at 140, 395 P.2d at 929. Rather, he or someone on his behalf makes "basic health services payment[s] . . . on a periodic basis without regard to the dates health services . . . are provided," and payments are "fixed without regard to the frequency, extent, or kind of health service . . . actually furnished." *See supra* note 13. If a distinction can be drawn between the situation involving a member of the Kaiser plan and a serviceman, it is in the fact that the member or his employer has paid Kaiser in advance for any medical care that may be required. "Certainly neither the

---

[13] A "health maintenance organization" is a legal entity providing

basic health services for a basic health services payment which (A) is to be paid on a periodic basis without regard to the dates health services . . . are provided; (B) is fixed without regard to the frequency, extent, or kind of health service . . . actually furnished; (C) . . . is fixed under a community rating system; and (D) may be supplemented by additional nominal payments[,]

and which is "organized and operated" in a manner prescribed by law. 42 U.S.C. § 300e.

We have no reason to believe other insurers do not follow this practice.

[14] We previously outlined the basic features of the Kaiser Foundation Health Plan as follows:

The Health Plan has agreements with the [Kaiser Foundation] Hospital and the [Hawaii Permanente] Medical Group under which in consideration of the payment "of stated sums" to the Hospital and "of a stated sum per month" to the Medical Group they, respectively, furnish whatever hospital or medical care is required by members of the plan. Funds for such payments are raised by premiums paid by the members of the Health Plan.

*Masaki v. Columbia Casualty Co.*, 48 Haw. at 138, 395 P.2d at 928.

Kaiser Hospital nor the Medical Group . . . perform[s] gratuitous services either for [the insured] or for the Kaiser Health Plan." *Masaki v. Columbia Casualty Co.*, 48 Haw. at 143-44, 395 P.2d at 931.

But as conceded by Allstate's counsel at oral argument, the United States also does not furnish medical care gratuitously. To say that the medical care provided at Tripler is actually free would be a canard. Though the serviceman pays no one when care is rendered, what is promised and provided by law is part of his compensation for service in the armed forces. *See supra* note 4. He, like the Kaiser member whose employer pays Kaiser, is afforded prepaid medical care as part of his compensation. And if Kaiser has a right to be reimbursed as a person "insured" under a no-fault policy purchased by one of its members, the United States should be treated no differently under a similar policy purchased by a member of the armed forces.

Citing *Wong v. Hawaiian Insurance Cos.*, 64 Haw. 189, 637 P.2d 1144 (1981), Allstate argues the United States, nonetheless, has no remedy under the statutory scheme. "The language of the pertinent statutes[,]" Allstate argues, "is plain and clear. The no-fault claimant who is entitled to benefits must himself or herself sustain the 'accidental harm' giving rise to the loss for which the claim is being made." *Id.* at 191, 637 P.2d at 1145. *Wong v. Hawaiian Insurance Cos.*, however, is inapposite. Mrs. Wong, "who owned and operated a small business, closed her business to care for her son [who was injured in a motor vehicle accident], thereby suffering a loss of business profits." *Id.* at 190, 637 P.2d at 1145. She "thereupon filed suit to recover the loss of profits under the no-fault coverage." *Id.* We ruled that since the limit of benefits[15] under the no-fault statute is "phrased as being payable to the person(s) who sustained the accidental harm, . . . the 'loss from accidental harm' referred to in HRS § 294-3(a) means a loss which is sustained by the

---

[15] HRS § 294-3(c) provides:

"Maximum limit". The total no-fault benefits payable per person or on the person's death to the person's survivor on account of accidental harm sustained by the person in any one motor vehicle accident shall be $15,000, regardless of the number of motor vehicles involved or policies applicable.

person injured." *Id.* at 191, 637 P.2d at 1145. The care given by Mrs. Wong to her son was gratuitous — as we observed, the care furnished Strathman was not.

The United States sustained a "loss" — the expenditure of resources — as a consequence of Strathman's accident and is entitled to "no-fault benefits" under the no-fault statutory scheme. In so holding, we read the terms "person, insured" and "loss from accidental harm" in HRS § 294-3(a) expansively to effectuate the avowed legislative purpose of the Motor Vehicle Accident Reparations Act "to create a system of *reparations for accidental harm and loss* arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents." HRS § 294-1(a) (emphasis added). We are convinced too that

[t]o allow [Allstate] to demand and receive from [Strathman] the same insurance premium which it receives from all others not so favorably situated, and then to disclaim liability for the benefits it has agreed to pay because such benefits have been paid by the Government under mandatory requirements of law, would create a windfall in [Allstate's] favor and bring about an unconscionable and inequitable result.

*United Services Automobile Association v. Holland,* 283 So. 2d 381, 386 (Fla. Dist. Ct. App. 1973). Our answer to the certified question under the circumstances recounted by the Court of Appeals of the Ninth Circuit thus is that the United States may recover the medical care costs in question.

*Mark J. Bennett,* Assistant U.S. Attorney, for appellant.

*Richard C. Sutton, Jr. (G. Richard Morry* with him on the brief; *Rush, Moore, Craven, Kim & Stricklin,* of counsel) for appellee.

DISSENTING OPINION OF WAKATSUKI, J.

I respectfully dissent.

The majority decides, as between the no-fault insurance carrier and the United States government, that the insurance carrier should shoulder the burden of paying for the medical treatment provided to the serviceman injured in an automobile accident. This decision, in my opinion, strains the language of our no-fault statute

to reach a policy decision that neither the state legislature nor Congress 'has chosen.

A plain reading of the language of Hawaii's no-fault statutes convinces me that the United States government is not an "insured person" who suffered "loss from accidental harm" therefore, the government should not be entitled to any no-fault benefits under the contract between Strathman and Allstate.

A.

Section 294-3(a), Hawaii Revised Statutes (HRS), provides:

If the accident causing accidental harm occurs in this state, every person, insured under this chapter, and the person's survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits.

In *Wong v. Hawaiian Insurance Companies,* 64 Haw. 189, 637 P.2d 1144 (1981), this court, finding the above language to be "plain and clear", stated that "[t]he no-fault claimant who is entitled to benefits must himself or herself sustain the 'accidental harm' giving rise to the loss for which the claim is being made." *Id.* at 191, 637 P.2d at 1145.

The majority concedes that the language of HRS § 294-3 appears to preclude the payment of the no-fault benefits to the government. *Supra* at 9. But the majority is of the opinion that "[a] denial of benefits [to the government] cannot be squared with the comprehensive scheme" of the no-fault law. *Supra* at 9. I disagree.

It is not the objective of the "comprehensive scheme" of the no-fault statute to make insurers pay for all losses arising out of motor vehicle accidents. Rather, the treatment of victims injured in automobile accidents and the reduction of economic hardships to these victims are the primary public policy objectives which led to enactment of the no-fault laws. *See* Legislative Auditor, *A Study of Hawaii's Motor Vehicle Insurance Program,* 8-14 (1972).

In *Barcena v. Hawaiian Insurance & Guaranty Co., Ltd.,* 67 Haw. 97, 678 P.2d 1082 (1984), this court held that the physical therapy Mrs. Barcena, the accident victim, required as a result of an auto accident would be paid for either by way of public aid or no-fault

insurance. The primary objective recognized by this court was that Mrs. Barcena receive the necessary treatment with minimal hardship to herself. Public aid and no-fault insurance benefits were the means of fulfilling that objective. In recognizing "[t]he legislative will . . . that 'every insured person suffering loss from accidental harm arising out of the operation . . . of a motor vehicle has a right to no-fault benefits' . . .", *id.* at 104, 678 P.2d at 1089, this court did not thereby hold that no-fault insurance benefits were the primary or sole means of achieving the objectives of treatment for injuries and reduction of hardships.

Regardless of the existence of our no-fault statutes, Strathman would have received, and did receive, adequate and timely medical care from the government without cost to him. Under those facts, the decision of the majority does nothing to enhance the public policy objective of affording treatment to the accident victim without economic burden to him. Further, the plain and clear language of our no-fault statute does not provide for reimbursement to the government for its cost of treating Strathman at Tripler Hospital, a government institution.

Another stated goal of our no-fault statute is the reduction of motor vehicle insurance costs. *See Parker v. Nakaoka,* 68 Haw. ___, ___, 722 P.2d 1028, 1030 (1986). Since increases in the pay-out of no-fault insurance benefits will, in the long run, result in increases in the cost of no-fault insurance premiums, I find the decision to be contrary to legislative intent of reducing motor vehicle insurance costs.

### B.

The majority likens reimbursement to the government in this case to the practice of reimbursement to Kaiser Foundation Health Plan. The distinction is that each insured under the Kaiser plan bargains and pays for the medical care provided by Kaiser Hospital and Medical Group. *See Heusle v. National Mutual Insurance Co.,* 628 F.2d 833, 840 (3d Cir. 1980). On the other hand, the government, by statute, is charged with providing medical treatment to active duty military personnel. The benefit is not bargained for in the usual sense. Further, the inability of Kaiser to recoup payment for

services from no-fault insurers would "injure" the accident victim in terms of higher premiums being assessed to all members. To the contrary, failure to reimburse the government will not result in lower benefits or higher charges to the serviceman on active duty.

C.

The majority contends that a denial of reimbursement to the government would create a windfall in Allstate's favor. But I concur with the Third Circuit Court of Appeals that "[t]he concept of 'windfall' is misleading because ultimately one large group or the other [premium payers or taxpayers] (and they overlap) must shoulder the burden." *Heusle,* 628 F.2d at 838.

It must be kept in mind that any "windfall" for Allstate is not at Strathman's expense. Further, it is not as if Allstate collected a premium for a policy which provided no benefits. If Strathman obtained treatment at a hospital other than a federal one (as he did for a short period at Castle Hospital), or if the accident had injured a pedestrian or passenger, Allstate would be obligated to make payments under the policy. *See Sanner v. Government Employees Insurance Company,* 150 N.J. Super. 488, 496, 376 A.2d 180, 184-85 (1977).

If Allstate is indeed receiving a windfall because the premiums for policies covering those entitled to treatment in government facilities is too high, it is a matter for the insurance commissioner, *see* HRS § 294-13, or the legislature to address, and not this court. *Sanner,* 150 N.J. Super. at 496, 376 A.2d at 184.

Further,

Congress is free to consider . . . whether the burden of paying medical expenses should be borne by the large group of premium payers or by the large group of taxpayers. The legislative branch can best decide whether the federal government's interest outweighs the state's aim of reducing the cost of auto insurance.

*Heusle,* 628 F.2d at 838.

To date, Congress has chosen, as a matter of policy, to subrogate the government's claim only when liability for medical expenses for active duty servicemen flows from tort. *Heusle,* 628 F.2d

at 838. On the other hand, when government renders medical care to veterans for non-service connected disability, Congress has allowed the government to seek reimbursement from no-fault insurance carriers. 38 U.S.C. § 3629. *See also United States v. Dairyland Insurance Co.*, 644 F.Supp. 702 (N.D. Ga. 1986). It is up to Congress then, to change the policy to allow the government to seek reimbursement from no-fault insurance carriers if that is deemed to be in the public interest.

### D.

For the reasons stated, I would answer the certified question in the negative.