172 P.3d 471

Emerson M.F. JOU, M.D., and as to Some Claims, on Behalf of the Class of Others Similarly Situated, Plaintiff–Appellant,

v.

DAI–TOKYO ROYAL STATE INSURANCE COMPANY, Limited and Lawrence M. Reifurth[1], as the Director, State of Hawai'i Department of Commerce and Consumer Affairs, Defendants–Appellees,

and

John Does 1–50, Doe Attorneys 1–50, Doe Corporations 1–10; Doe Partnerships 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 26310.

Supreme Court of Hawai'i.

Nov. 16, 2007.

1. Pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 43(c) (2000), Lawrence M. Reifurth has been substituted as a party to the instant appeal in place of Mark E. Recktenwald, in his official capacity.

Stephen M. Shaw, on the briefs, for Plaintiff–Appellant Emerson M.F. Jou, M.D.

J. Patrick Gallagher, Joelle Segawa Kane, and Leah M. Reyes, on the briefs, Honolulu, for Defendant–Appellee Dai–Tokyo Royal State Insurance Company, Limited.

David A. Weber and Deborah Day Emerson, Deputy Attorneys General, on the briefs, for Defendant–Appellee Lawrence M. Reifurth, Director, Department of Commerce and Consumer Affairs, State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ. and ACOBA, J., concurring in the result only.

OPINION OF THE COURT BY
NAKAYAMA, J.

Plaintiff–Appellant, Emerson M.F. Jou, M.D. ("Jou"), appeals from the first circuit court's[2] December 17, 2003 judgment in favor of Defendant–Appellants, Dai–Tokyo Royal State Insurance Company, Limited ("DTRIC") and Lawrence E. Reifurth in his capacity as the director of the Department of Commerce and Consumer Affairs ("DCCA"), State of Hawai'i ("the director"). On appeal, Jou presents the following points of error: (1) the circuit court reversibly erred by denying his motion for recusal; (2) the circuit court reversibly erred by denying his oral motion for an interlocutory appeal from the denial of his motion for recusal; (3) the circuit court reversibly erred by denying his request to amend the complaint; (4) the circuit court erroneously granted summary judgment in favor of the director inasmuch as his declaration in support of summary judgment was insufficient; (5) the circuit court erred by granting DTRIC's motion to dismiss, or for summary judgment, inasmuch as "[t]he court was violating state law [sic] of equitable tolling, the right to sue insurers in tort notwithstanding administrative proceedings, and settled law of third party beneficiaries[ ]"; (6) the foregoing errors violated his constitutional rights to equal protection and due process of law under the state and federal constitutions; and (7) "[t]he first circuit, by repeatedly assigning [J]udge Hifo to Ap-

---

2. The Honorable Eden Elizabeth Hifo presided.

pellant's cases is creating a 'conduit court' bent on damaging Dr. Jou as much as possible on his way to the appellate courts." Also before this court is a motion for damages and costs filed by the director, pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 38, asserting that Jou filed a frivolous appeal.

For the following reasons, we conclude that Jou's points of error are without merit. However, we disagree with the director that Jou's appeal is frivolous. Accordingly, we affirm the judgment appealed from and deny the director's motion for damages and costs.

## I. BACKGROUND

On May 30, 2003, Jou filed a "Complaint In Tort For Insurer Bad Faith" in the first circuit court against DTRIC and the director. The case was assigned to the Honorable Judge Eden Elizabeth Hifo on June 4, 2003.

Jou filed a first amended complaint on June 12, 2003. Therein, he asserted four causes of action. Jou first claimed that DTRIC breached a duty of good faith and fair dealing owed to him as an intended third-party beneficiary by engaging in the following unfair and deceptive business practices:

[DTRIC] ... (a) failed to adequately address concerns stated in [Jou's] communications about the balance due; (b) failed to provide [Jou] with a reasonable explanation for delays on claims unresolved for thirty days; (c) did not attempt in good faith to effectuate settlements; (d) made payments to [Jou] not accompanied by a statement setting forth the coverage under which the payments were made; (e) required duplicative proofs of loss from [Jou], a physician (f) failed to promptly provide an explanation of the basis in the insurance policy for the denial or partial payment, and (g) sent the equivalent of "final" or "paid in full" partial payments to [Jou].

Second, Jou requested declaratory relief, asserting that the director's staff utilized " 'old

boy', 'back door', and other corrupt procedures which deprive[d] [Jou] and others similarly situated of adequate notice and a meaningful opportunity to be heard as to their liberty and property rights...." Jou asserted further that the DCCA's "administrative hearing system, in its entirety, on the face of its statutes rules and procedures; and, as this scheme is applied to [Jou], and others similarly situated, violates [Jou's] property and liberty rights ... and is completely unworthy of public confidence." Jou's third claim requested injunctive relief against the DCCA and its hearings officers, asserting that "all administrative remedies for [Jou] and others similarly situated, ... are futile, void and inadequate, and should be enjoined...." Finally, Jou's fourth claim alleged the existence of a numerous class of individuals who suffered similar injuries.

On July 3, 2003, the director filed a "Motion For Summary Judgment Or Dismissal" asserting that (1) the Hawai'i Administrative Procedures Act ("HAPA") and the DCCA's related procedural rules are not unconstitutional, (2) Jou's complaint contains only conclusory accusations of corruption, and fails to state specific facts and circumstances that, if true, would support a due process violation, (3) Jou may not attempt to circumvent the contested case hearing procedure by declaring it corrupt or unconstitutional, and (4) the court lacks subject matter jurisdiction over Jou's claims for declaratory and injunctive relief.[3]

On July 10, 2003, Jou filed a "Motion To Recuse Or Disqualify The Honorable Eden Elizabeth Hifo[.]" Jou asserted that Judge Hifo rendered several "questionable" and adverse rulings against him in prior civil cases in which she presided that cumulatively demonstrate her bias against him and his counsel.[4]

On August 1, 2003, the circuit court filed an order denying Jou's motion for recusal or disqualification. The order additionally denied an oral motion for interlocutory appeal, apparently raised at a hearing on the motion

---

**3.** Jou filed a memorandum in opposition on July 14, 2003.

**4.** The director filed a memorandum in opposition on July 10, 2003. DTRIC filed a memorandum in opposition on July 15, 2003.

for recusal or disqualification. Also on August 1, 2003, the circuit court filed an order granting the director's motion for summary judgment.

On August 14, 2003, DTRIC filed a motion to dismiss Jou's first amended complaint, or for summary judgment. Therein, DTRIC asserted that (1) Jou elected to pursue administrative remedies for his bill disputes with DTRIC and has not exhausted those remedies; (2) certain claims are barred by the statute of limitations; and (3) Jou is not DTRIC's insured and therefore has no standing to assert a claim for bad faith against DTRIC.[5]

On September 29, 2003, Jou filed a motion for leave to amend his first amended complaint in order to assert an additional claim based upon *United States v. Allstate*, 69 Haw. 290, 740 P.2d 550 (1987).[6]

On November 13, 2003, the circuit court filed an order denying Jou's motion to amend his first amended complaint.

On November 18, 2003, the circuit court filed an order granting DTRIC's motion for dismissal or summary judgment. In its order, the circuit court provided the following conclusions:

1. DTRIC's Motion to Dismiss First Amended Complaint or, in the Alternative, Motion for Summary Judgment is GRANTED as to the claims arising from Dr. Jou's treatment of N. Agbayani, A. Agbayani and Kiyomi Dixon by virtue of the statute of limitations.

2. DTRIC's Motion to Dismiss First Amended Complaint or, in the Alternative, Motion for Summary Judgment is GRANTED as to those claims regarding payment of bills under the no-fault statute as Dr. Jou elected administrative remedies.

3. DTRIC's Motion to Dismiss First Amended Complaint or, in the Alternative, Motion for Summary Judgment is GRANTED as to the claims of bad faith or tortious relief as the provider, Dr. Jou, as an incidental beneficiary to the insurance contract for no-fault benefits, lacks standing to bring a claim for bad faith or tortious relief against the insurer DTRIC.

The circuit court filed its judgment in favor of the director and DTRIC on December 17, 2003. Jou filed a timely notice of appeal on December 30, 2003.

## II. STANDARDS OF REVIEW

### A. Motion for Recusal or Disqualification

■ "This court has adopted the abuse of discretion standard for reviewing a judge's denial of a motion for recusal or disqualification." *State v. Ortiz*, 91 Hawai'i 181, 188, 981 P.2d 1127, 1134 (1999) (citing *State v. Ross*, 89 Hawai'i 371, 376, 974 P.2d 11, 16 (1998)) (internal quotation marks omitted) (brackets omitted).

### B. Interlocutory Appeal

■ According to Hawai'i Revised Statutes ("HRS") § 641–1(b) (1993), interlocutory appeals "may be allowed by a circuit court *in its discretion* from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it." (Emphasis added.) Because the circuit court is vested with discretion over the matter, our review is appropriately limited to the question whether the circuit court abused that discretion. *Cf. Tri–S Corp. v. Western World Ins. Co.*, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) ("[T]he circuit court has discretion to grant extensions of time, and thus we review its orders in this regard for abuse of that discretion.").

### C. Motion for Leave to Amend the Complaint

■ "Orders denying motions for leave to amend a complaint are reviewed for an abuse of discretion." *Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006).

---

5. Jou filed a memorandum in opposition on October 3, 2003.

6. DTRIC filed a memorandum in opposition on October 9, 2003.

## D. Summary Judgment

In *Kau v. City & County of Honolulu*, 104 Hawai'i 468, 92 P.3d 477 (2004), we explained that the following principles guide our review of a circuit court's grant of summary judgment:

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawai[i] Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City & County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Id.* at 473–74, 92 P.3d at 482–83 (some brackets added, some in original). Subsequently, in *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 99 P.3d 1046 (2004), we discussed the particular burdens of production and persuasion as follows:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material facts exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part [sic] is entitled to summary judgment as a matter of law.

*Id.* at 470, 99 P.3d at 1054 (citing *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995) (citations omitted)).

## E. Motion to Dismiss

This court has recently applied the following standard when reviewing a circuit court's order denying a motion to dismiss:

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.

*In re Estate of Rogers*, 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003) (citations omitted) (brackets omitted) (ellipses omitted).

## F. Constitutional Law

"We review questions of constitutional law *de novo*, under the right/wrong

standard." *Onaka v. Onaka,* 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006).

## III. DISCUSSION

### A. Motion for Recusal or Disqualification

 Jou's first point of error asserts that Judge Hifo is biased against him and his counsel and that her refusal to recuse herself violated his right to due process in violation of the state and federal constitutions. Jou specifically refers this court to his motion for recusal, filed in the circuit court on July 10, 2003, in which he presented a summary of multiple adverse rulings rendered by Judge Hifo. Jou characterizes those rulings as exhibitions of "extreme bias" and "unseemly favoritism." Jou's point of error is without merit.

 It is well-settled that mere adverse rulings are insufficient to establish bias. *See Ross,* 89 Hawai'i at 380, 974 P.2d at 20 ("We have long recognized, however, that petitioners may not predicate their claims of disqualifying bias on adverse rulings, even if the rulings are erroneous."); *James W. Glover, Ltd. v. Fong,* 39 Haw. 308, 316 (1952) (stating that "mere adverse rulings, even if erroneous[,]" would not constitute a "basis for disqualification[ ]"). To the extent that Jou's motion for recusal is supported only by examples of adverse rulings in prior proceedings before Judge Hifo, it did not sufficiently demonstrate "a bent of mind that may prevent or impede impartiality of judgment." *Ross,* 89 Hawai'i at 377, 974 P.2d at 17 (citing *Whittemore v. Farrington,* 41 Haw. 52, 57 (1955)).[7] The record is otherwise devoid of any indicia of bias or prejudice on the part of Judge Hifo, and Jou's characterizations of Judge Hifo's rulings appear to have no basis in fact.

### B. Interlocutory Appeal

 Jou's second point of error asserts that the circuit court reversibly erred by denying Jou's oral motion for an interlocutory appeal from the denial of his motion for recusal. However, the conclusion, *supra—*

that the record lacks evidence of any bias or prejudice on the part of Judge Hifo—renders Jou's present point of error moot.

### C. Motion for Leave to Amend the Complaint

Jou's third point of error asserts that the circuit court erred by denying his motion for leave to amend his first amended complaint. More particularly, Jou claims that this jurisdiction follows federal interpretations of Federal Rules of Civil Procedure ("FRCP") Rule 15 and that a motion to amend the complaint in response to a motion to dismiss cannot be denied if the amendment can state legally cognizable claims. DTRIC, on the other hand, argues that Jou's proposed second amended complaint added "nothing substantial to the issues[.]"

A fair reading of Jou's proposed second amended complaint indicates that Jou desired to supplement a previously asserted claim—that he is an intended third-party beneficiary—with additional legal authority. To wit, Jou desired to assert a "new" claim under *Allstate.* However, inasmuch as *Allstate* does not support Jou's assertion of a bad faith tort claim against DTRIC, *see* discussion *infra,* we consequently conclude that Jou's proposed amendment would have been futile. *See Hirasa v. Burtner,* 68 Haw. 22, 26, 702 P.2d 772, 775 (1985) ("In the absence of any apparent or declared reason ... such as ... futility of the amendment ... the leave should, as the rules require, be 'freely given.'") (Some ellipses in original and some added.) (Citations omitted.).

### D. The Director's Motion for Summary Judgment

 Jou's fourth point of error asserts that the circuit court reversibly erred by granting the director's motion for summary judgment. He argues that he desired a declaration that "procedures in the DCCA and its rules are corrupted and violate the state and federal constitutions." Jou further requested an injunction against the use of such "corrupt and unconstitutional procedures."

---

7. Although DTRIC asserts other procedural defects in Jou's motion for recusal, we do not address them as we have already concluded that Jou's point of error is without merit.

Jou avers that the director did not meet his burden of demonstrating the absence of genuine issues of material fact inasmuch as the director supported his motion for summary judgment with xerox copies of certain administrative rules. The director counters that Jou has asserted no specific facts supporting an "as-applied" constitutional challenge, and that his argument must be construed as a facial attack on the DCCA's administrative rules. The director contends that Jou has failed to demonstrate that the DCCA's administrative hearing system is facially unconstitutional.

We agree with the director. Jou's claim against the director is framed as a facial constitutional attack. His first amended complaint states: "The Director's administrative hearing system, *in its entirety, on the face of its statutes rules and procedures;* and, as this scheme is applied to Plaintiff, and others similarly situated, violates the Plaintiff's property and liberty rights as aforesaid and is completely unworthy of public confidence[.]" (Emphasis added.) Jou did not assert any specific acts or omissions that limit his claim to an as-applied challenge. A facial challenge, by nature, implicates no facts in particular as it is purely a question of law. *See Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.,* 143 Idaho 862, 154 P.3d 433, 441 (2007) ("A facial challenge to a statute or rule is 'purely a question of law.' ") (Citing *State v. Cobb,* 132 Idaho 195, 969 P.2d 244, 246 (1998).); *Shuger v. State,* 859 N.E.2d 1226, 1231 (Ind.Ct.App. 2007) ("Whether a statute is unconstitutional on its face is a question of law."); *United States v. Quinones,* 313 F.3d 49, 59 (2d Cir. 2002) ("A challenge to the facial constitutionality of a criminal statute is a pure question of law."). There being no genuine issue of material fact, the director was only required to persuade the circuit court that the administrative hearing system was not facially unconstitutional as a matter of law. *See Stanford Carr Dev. Co. v. Unity House, Inc.,* 111 Hawai'i 286, 295, 141 P.3d 459, 468 (2006) ("[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.") (Brackets in original.) (Block quote formatting omitted.) (Citation omitted.). We therefore disagree with Jou that the director was required to "demonstrate that if the case went to trial there was no competent evidence to support a judgment for the DCCA Director." To the extent that Jou offers no further appellate argument, he has failed to demonstrate that the circuit court reversibly erred by granting summary judgment in favor of the director.

### E. DTRIC's Motion to Dismiss or for Summary Judgment

Jou's fifth point of error asserts that the circuit court erred by granting DTRIC's motion for dismissal, or for summary judgment, inasmuch as "[t]he court was violating state law of equitable tolling, the right to sue insurers in tort notwithstanding administrative proceedings, and settled law of third party beneficiaries."

#### 1. *Intended third-party beneficiaries*

For purposes of clarity, we first address Jou's third sub-argument—that the circuit court erred by concluding that he was not an intended third-party beneficiary to the insurance policy agreements between DTRIC and its insureds.

For support, Jou relies heavily on *Allstate.* However, that reliance is misplaced.

In *Allstate,* Thomas L. Stratham ("Stratham"), an enlisted member of the United States Navy, was injured in a motorcycle accident on August 21, 1982. 69 Haw. at 291, 740 P.2d at 551. The injured serviceman was initially treated at Castle Memorial Hospital, a civilian medical facility, then transferred to Tripler Army Medical Center. *Id.* The United States reimbursed Castle Memorial Hospital for the cost of the serviceman's medical care and subsequently made a claim against Stratham's no-fault insurer, Allstate Insurance Company ("Allstate"). *Id.* at 292, 740 P.2d at 551. Allstate tendered a check in the amount of the reimbursement that the United States paid to Castle Memorial Hospital but refused to pay the government for the expenses incurred in connection with the ser-

viceman's treatment at Tripler Army Medical Center. *Id.* The United States then filed a complaint in the United States District Court for the District of Hawai'i. *Id.* The district court granted judgment in favor of Allstate. *Id.* On appeal, the United States Court of Appeals for the Ninth Circuit certified the question "whether the United States may recover from a serviceman's no-fault insurance carrier the costs of medical care furnished in a government hospital to the serviceman who was injured in a motor vehicle accident." *Id.* at 291, 740 P.2d at 551.

The United States argued before this court that (1) "the Hawaii no-fault laws provide a statutory basis for recovery"; (2) it is "entitled to recover as a third-party beneficiary of the insurance contract"; and (3) Allstate "has received a windfall and [has] been unjustly enriched and is, therefore, ... liable ... for the costs of [the] health care provided." *Id.* at 294, 740 P.2d at 552 (brackets in original) (ellipses in original).

Initially, we noted that the certified question was limited to whether the United States had a statutory basis for recovery, and we therefore stated that "we [would] not address the government's contract and equity arguments separately." *Id.* at 294 n. 7, 740 P.2d at 552 n. 7. Reviewing the Hawai'i Motor Vehicle Accident Reparations Act, then codified as HRS chapter 294, we concluded that the United States may recover the costs of medical care received by Stratham. *Id.* at 294, 740 P.2d at 552.

Under HRS chapter 294, recovery was limited to a "person, insured" who suffered a "loss from accidental harm." *Id.* at 296, 740 P.2d at 553–54. Nevertheless, we opined that denying the United States' claim was inconsistent with (1) "Chapter 294's declared purpose to create a no-fault system of reparations," (2) "its limitation of tort liability," (3) "its establishment of right to 'no-fault benefits' for loss from accidental harm arising out of the operation of a motor vehicle[,]" and (4) "the comprehensive scheme designed to provide 'a speedy, adequate and equitable reparation for those injured or otherwise victimized' by motor vehicle accidents." *Id.* at 296–97, 740 P.2d at 554 (citations omitted). We thus interpreted the term "person, in-

sured" to include the United States and the term "loss from accidental harm" to include the expenses incurred by the United States in connection with Stratham's treatment at Tripler Army Medical Center:

> [W]e read the terms "person, insured" and "loss from accidental harm" in HRS § 294–3(a) [ (1985) ] expansively to effectuate the avowed legislative purpose of the Motor Vehicle Accident Reparations Act "to create a system of *reparations for accidental harm and loss* arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents."

*Id.* at 299, 740 P.2d at 556 (citing HRS § 294–1(a) (1985)) (emphasis in original). We added that:

> [t]o allow [Allstate] to demand and receive from [Stratham] the same insurance premium which it receives from all others not so favorably situated, and then to disclaim liability for the benefits it has agreed to pay because such benefits have been paid by the Government under mandatory requirements of law, would create a windfall in [Allstate's] favor and bring about an unconscionable and inequitable result.

*Id.* at 300, 740 P.2d at 556 (citing *United Servs. Auto. Ass'n v. Holland*, 283 So.2d 381, 386 (Fla.Dist.Ct.App.1973) (brackets in original).

We therefore answered the certified question in the affirmative. *Id.*

Jou is, to some extent, correct that his position as a medical services provider is analogous to the United States' position in *Allstate.* However, he mischaracterizes the import of that similarity. As mentioned, the sole question in *Allstate* was whether the United States could recover under the no-fault insurance statutory scheme then in effect. Indeed, HRS chapter 294 did not expressly afford medical service providers with a statutory right of action against insurers. *See* HRS § 294–3(a) (1985) ("If the accident causing accidental harm occurs in this State, every person, insured under this chapter, and the person's survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle

has a right to no-fault benefits."); HRS § 294–4(1)(A) (1985) (obligating insurers to pay benefits for accidental harm to "any person ... who sustains accidental harm as a result of the operation, maintenance, or use of the vehicle...."). This explains the need to expansively construe the terms "person, insured" and "loss from accidental harm." As such, this court pointed to the inequity that would result from precluding the United States to recover its expenses from Allstate *in toto.*

Here, however, there is no question as to Jou's *statutory right to recover.* See HRS § 431:10C–304 (obligating the insurer to pay "the provider of services" on behalf of the injured insured).[8] Rather, Jou argues that *Allstate* also authorizes recovery *in tort.* In that regard, Jou appears to suggest that *Allstate* supports his assertion that medical providers are intended third-party beneficiaries in the no-fault automobile insurance context. Jou's reading of *Allstate* is incorrect. In *Allstate,* this court did not address the United States' claim that it was an intended third-party beneficiary, instead deciding the matter on statutory and equitable grounds.

We also disagree with Jou's subsequent assertion that HRS § 431:10C–304 establishes his status as an intended third-party beneficiary.

Ordinarily, third-party beneficiary status is a question of fact as to whether the terms of the insurance policy reflect an intent to benefit the provider. *See Elsner v. Farmers Ins. Group, Inc.,* 364 Ark. 393, 220 S.W.3d 633, 636 (2005) (holding that the trial court properly granted defendant-appellee's motion to dismiss inasmuch as "there [was] nothing in the contract to indicate that [plaintiff-appellant] was an intended third-party beneficiary...."); *United States v. United Servs. Auto. Ass'n,* 431 F.2d 735, 736 (5th Cir.1970), *cert. denied by* 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 440 (1971) (concluding that, *under the terms of the policy,* the United States was clearly an intended third-party beneficiary); *United States v. State Farm*

*Mut. Auto. Ins. Co.,* 455 F.2d 789, 792 (10th Cir.1972) ("We hold that the United States qualifies as a third-party beneficiary *under the policy* ....") (Emphasis added.); *Postlewait Constr. Inc. v. Great Am. Ins. Cos.,* 106 Wash.2d 96, 720 P.2d 805, 807 (1986) ("In order to be a third-party beneficiary entitled to recover on an insurance contract, it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary. Both parties must so intend *and must indicate that intention in the contract.*") (Citation omitted.) (Emphasis added.); *Bergerud v. Progressive Cas. Ins.,* 453 F.Supp.2d 1241, 1247 (D.Nev.2006) ("Whether a party is considered a specific intended third-party beneficiary must be gleaned from reading the contract as a whole in light of the circumstances under which it was entered.") (Citing *Canfora v. Coast Hotels & Casinos, Inc.,* 121 Nev. 771, 121 P.3d 599, 605 (2005).) (Internal quotation marks omitted.); *Cal. Emergency Physicians Med. Group v. PacifiCare of Cal.,* 111 Cal.App.4th 1127, 1138, 4 Cal. Rptr.3d 583, 595 (Cal.Ct.App.2003) ("Third party beneficiary status is a matter of contract interpretation."); 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 241:25 at 241–34 (2000) ("In order for a third party to maintain an action against an insurer, an intent to make the obligation inure to the benefit of such person must clearly appear in the contract of insurance, and, if any doubt exists, the contract should be construed against such intent.") (Footnotes omitted.).

In resolving the foregoing factual inquiry, this jurisdiction follows the framework set forth by the *Restatement (Second) of Contracts* § 302 (1981), as follows:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

8. HRS chapter 294 was repealed by 1988 Haw. Sess. L., Act 156, § 2 at 156. HRS chapter 431:10C was enacted by 1987 Haw. Sess. L., Act 347, vol. II, § 2 at 1–342, and was effective July 1, 1988. *See* 1987 Haw. Sess. L., Act 347, vol. II, § 4 at 342.

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*See also Hough v. Pac. Ins. Co., Ltd.,* 83 Hawai'i 457, 468 n. 15, 927 P.2d 858, 869 n. 15 (1996) (quoting *Restatement (Second) of Contracts* § 302).

Here, Jou does not argue that the insurance policy agreements in the present case recognize him as a third-party beneficiary. Rather, he claims that HRS § 431:10C–304 creates the alleged quasi-contractual relationship by operation of law.

HRS § 431:10C–304 states, in relevant part, the following:

Every personal injury protection insurer shall provide personal injury protection benefits for accidental harm as follows:

(1) Except as otherwise provided in section 431:10C–305(d), in the case of injury arising out of a motor vehicle accident, the *insurer shall pay,* without regard to fault, *to the provider of services on behalf of the following persons* who sustain accidental harm as a result of the operation, maintenance, or use of the vehicle, an amount equal to the personal injury protection benefits as defined in section 431:10C–103.5(a) payable for expenses to that person as a result of the injury:

(A) Any person, including the owner, operator, occupant, or user of the insured motor vehicle;

(B) Any pedestrian (including a bicyclist); or

(C) Any user or operator of a moped as defined in section 249–1;

provided that this paragraph shall not apply in the case of injury to or death of any operator or passenger of a motorcycle or motor scooter as defined in section 286–2 arising out of a motor vehicle accident, unless expressly provided for in the motor vehicle policy . . . .

(Emphases added.) Relatedly, HRS § 431:10C–308.5(f) precludes a provider from billing an insured directly or from recovering from the insured the difference between the provider's full charge and the amount actually paid by the insurer. *See* HRS § 431:10C–308.5(f) ("The provider of services . . . shall not bill the insured directly for those services but shall bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.").

Admittedly, these statutory sections impose an obligation on the insurer to pay the provider directly. However, they do not establish Jou's status as an intended third-party beneficiary under the *Restatement (Second)* as a matter of law.

The *Restatement (Second)* approach contemplates two types of intended third-party beneficiaries: creditor beneficiaries and donee beneficiaries. *See Restatement (Second) of Contracts* § 302 cmt. b, c.

According to the *Restatement (Second)*, a third party is an intended creditor beneficiary under § 302(1)(a) if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary . . . ." At first glance, it may appear that DTRIC's payment to Jou (performance of the promise) would satisfy an obligation of the insured (the promisee) to pay money to Jou (the beneficiary) in exchange for medical services rendered. However, there is persuasive authority that the "obligation" referred to must pre-exist the contract. *See Sher v. Cella,* 114 Hawai'i 263, 269, 160 P.3d 1250, 1256 (App. 2007) (stating, in relevant part, that a broker was an intended third-party beneficiary of an acquisition agreement inasmuch as "the benefit was intended in satisfaction of a *pre-existing obligation* to that party (the requirement . . . that the Seller pay a commission to the brokers in the event of a sale) . . ."); *E.I. DuPont de Nemours &*

*Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196–97 (3d Cir.2001) ("Under Delaware law, which is the law the parties discuss, to qualify as a third party beneficiary or a contract, ... the benefit must have been intended as a gift or in satisfaction of a *pre-existing obligation* to that person....") (Emphasis added.); *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1387 (Del.Super.Ct.1990) ("It is abundantly clear to the Court that Plaintiffs were not creditors ... at the time the ... contract was made...."). Here, the obligation of the insured to compensate Jou for medical services rendered did not pre-exist the insurance contract. Thus, Jou does not qualify as an intended creditor beneficiary under § 302(1)(a).

Jou also does not qualify as a donee beneficiary under § 302(1)(b), which states that a third party is an intended beneficiary if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." We need not delve too deep inasmuch as it is clear that payment to Jou was not a gift. *See Restatement (Second) of Contracts* § 302 cmt. c (stating that § 302(1)(b) pertains to situations involving a "gift promise" or a "donee beneficiary"); *Guardian Constr. Co.*, 583 A.2d at 1387 ("It is abundantly clear to the Court that Plaintiffs were not creditors ... at the time the ... contract was made *nor were they the subject of [a party's] generosity.*") (Emphasis added.).

Accordingly, inasmuch as (1) this jurisdiction's no-fault legislative scheme does not establish his status as a third-party beneficiary as a matter of law, and (2) Jou does not assert that the insurance contract establishes him as a third-party beneficiary, we conclude that his present point of error is without merit.[9]

9. We note that Jou made a similar argument in *Jou v. Nat'l Interstate Ins. Co. of Hawaii*, 114 Hawai'i 122, 157 P.3d 561 (App.2007), *cert. denied*, 115 Hawai'i 362, 167 P.3d 355 (2007). Therein, the Intermediate Court of Appeals ("ICA") rejected Jou's assertion that he was an intended third-party beneficiary of a worker's compensation insurance policy as a matter of law. *Id.* at 134, 157 P.3d at 573. The ICA relied, in large part, on other jurisdictions that have rejected similar claims from health care providers. For example, in *McFadden v. Liberty Mut. Ins. Co.*, 803 F.Supp. 1178 (N.D.Miss.1992), the District Court for the Northern District of Mississippi reasoned, *inter alia*, that "[a]lthough they may directly benefit, as a class, treating physicians are not intended beneficiaries of the MWCA [Mississippi Workers' Compensation Act]." *Jou*, 114 Hawai'i at 132, 157 P.3d at 571 (citing *McFadden*, 803 F.Supp. at 1184) (brackets in original). Similarly, in *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785 (Tex.Ct.App.1992), the Texas Court of Appeals stated that

when a person contracts with an insurer *for the benefit of another*, both the person contracting and the third party may expect that the insurer would owe the same duty to the designated third party as it would to the person making the contract. Scheffey contends that, as a physician of choice to [the insurance carrier's] third-party insureds—the employees of the companies insured by [the insurance carrier]—he is entitled to the same status as a third-party beneficiary to the insurance contract. No Texas court has extended the insurer's duty of good faith and fair dealing to persons in

Scheffey's position. Scheffey did not have any special relationship with [the insurance carrier], and he was not a person to whom [the insurance carrier] owed a duty of good faith and fair dealing.

*Jou*, 114 Hawai'i at 133, 157 P.3d at 572 (citing *Scheffey*, 828 S.W.2d at 790–91) (emphasis in original) (brackets in original). The ICA agreed with the *McFadden* and *Scheffey* courts that "there is nothing inherent in Dr. Jou's status as a physician who provided treatment to the injured employee that entitles him to sue National in tort for bad faith." *Id.* The ICA explained that, even though this jurisdiction's worker's compensation scheme regulates physicians by, among other things, precluding them from billing the injured employee and requiring them to submit billing disputes to the director of the Department of Labor and Industrial Relations for resolution, *id.*, the worker's compensation scheme is designed to "compensate employees for work-related injuries, not to compensate physicians." *Id.* Ultimately, the ICA concluded as follows:

In the context of the Hawai'i workers' compensation scheme, a physician is an incidental beneficiary rather than an intended third-party beneficiary of the employer's workers' compensation insurance policy. In providing workers' compensation insurance coverage, the insurer promises the employer that the insurer will pay benefits owed by the employer to the injured employees. This promise incidentally benefits the physician to the extent that the physician provides treatment for which the employer is required to pay. We conclude that Dr. Jou is not an intended third-

### 2. *Statute of limitations*

Jou also contends that the statutes of limitations, codified as HRS §§ 657–7 and 431:10C–315, were subject to the tolling rule applied in *State Farm Mut. Auto. Ins. Co. v. Murata*, 88 Hawai'i 284, 965 P.2d 1284 (1998) and *Wright v. State Farm Mut. Auto. Ins. Co.*, 86 Hawai'i 357, 949 P.2d 197 (App.1997). However, because Jou has failed to establish his standing as a third-party beneficiary to assert a bad faith tort claim, the statute of limitations issue is moot.

### 3. *Concurrent administrative proceedings*

Jou's final sub-argument asserts that "Judge Hifo reversibly ruled that [Jou] forwent his suit for insurer bad faith by requesting administrative relief under HRS § 431:10C–212." Jou misreads the circuit court's order. The circuit court precluded Jou from reasserting his statutory claims regarding his bill payment dispute with DTRIC in the court proceedings because he elected administrative remedies. The circuit court did not preclude his tort claim.

Rather, as discussed *supra*, the circuit court rejected Jou's bad faith tort claim because he lacked standing as an incidental, rather than intended, third-party beneficiary. DTRIC conceded below that the DCCA did not have jurisdiction over tort claims and that the election of remedies defense, set forth in *Moss v. Am. Int'l Adjustment Co., Inc.*, 86 Hawai'i 59, 947 P.2d 371 (1997), did not preclude the filing of a tort claim for bad faith in the circuit court. The circuit court's holding was not to the contrary.

### F. The Cumulative Effect on Jou's Constitutional Rights

Jou's sixth point of error contends that the errors asserted in his foregoing points of error violated his constitutional rights to equal protection and due process of law under the state and federal constitutions. However, to the extent that Jou has failed to prevail on any of his points of error, the basis for his constitutional argument is defeated.

### G. Failure to Argue

■ Jou's seventh point of error alleges that "[t]he first circuit, by repeatedly assigning [J]udge Hifo to Appellant's cases is creating a 'conduit court' bent on damaging Dr. Jou as much as possible on his way to the appellate courts." However, Jou's opening brief does not contain a related argument section. Accordingly, the point of error is waived. *See* HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

### H. Jou's Remaining Arguments Need Not Be Addressed.

■ Jou's opening brief also asserts the following arguments: (1) the circuit court, by failing to acknowledge *Allstate* and otherwise remaining unfaithful to the common law, has left him without an adequate remedy; (2) the state, through its judiciary, is causing judicial and administrative remedies to be inadequate to address the claimed wrongs and is thereby violating his constitutional rights and access to the courts; (3) the state, through its judiciary, deprived him of his property without due process of law; and (4) the circuit court "exceeded its jurisdiction knowing injury would be compounded during appellate delay"; However, these arguments have not been preserved as they have not been presented as points of error. *See* HRAP Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded. . . ."). Accordingly, we do not address them.

### I. The Director's HRAP Rule 38 Motion

■ Also before this court is a motion, filed by the director pursuant to HRAP Rule 38,[10] requesting damages and costs inasmuch

---

party beneficiary of National's insurance policy and does not have a cause of action in tort for bad faith against National.
*Id.* at 134, 157 P.3d at 573.
Our rejection of Jou's third-party beneficiary claim in the present motor vehicle insurance context is consistent with the ICA's treatment of Jou's third-party beneficiary claim in the work-

er's compensation context. Although the ICA's opinion in *National* did not discuss whether Jou's third-party beneficiary claim was based upon a preexisting obligation, it is clear that any obligation to Jou did not preexist the worker's compensation insurance policy at issue.

**10.** HRAP Rule 38 authorizes an award of damages if an appeal is determined to be frivolous.

as Jou's appeal as to him was frivolous. For the following reasons, we deny the director's motion.

It is important to note that Jou does not argue on appeal that the DCCA administrative hearing system is facially unconstitutional. Rather, as mentioned *supra*, his appellate argument is that the circuit court failed to hold the director to his burden of production on summary judgment. Although Jou has thereby mistaken the movant's burdens on a motion for summary judgment against a facial constitutional attack, his argument is not akin to arguments that we have held to be frivolous in the past. *See, e.g., Child Support Enforcement Agency v. Doe,* 109 Hawai'i 240, 253–54, 125 P.3d 461, 474–75 (2005) (hereinafter "*CSEA* ") (finding father's argument that the Hawai'i Uniform Parentage Act violates his rights to privacy and equal protection, and his right to be free from compulsory service, to be "palpably without merit").[11] Accordingly, we deny the director's motion for damages and costs under HRAP Rule 38.

### IV. CONCLUSION

Based upon the foregoing analysis, we affirm the judgment appealed from and deny the director's HRAP Rule 38 motion for damages and costs.

ACOBA, J., concurs in the result only.

---

**11.** Although Jou's facial constitutional attack on the DCCA's administrative hearings system more closely resembles the argument found to be frivolous in *CSEA,* that argument was not reasserted on appeal.